IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:20-CV-11-RJ

| | |
|---|---|
| FELICIA GRADY LEE,<br><br>        Plaintiff/Claimant,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>        Defendant. | O R D E R |

      This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-25, -32] pursuant to Fed. R. Civ. P. 12(c). Claimant Felicia Grady Lee ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and this matter is remanded to the Commissioner for further proceedings.

**I. STATEMENT OF THE CASE**

      Claimant protectively filed applications for a period of disability, DIB, and SSI on July 9, 2010, alleging disability beginning May 23, 2010. (R. 227–36). Both claims were denied initially and upon reconsideration. (R. 80–117). A hearing before Administrative Law Judge ("ALJ") Edward Morriss was held on June 6, 2013, at which Claimant, represented by counsel, appeared

and testified. (R. 47–79). On June 26, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 31–46). On September 11, 2014, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant filed a complaint in this court seeking review of the final administrative decision, the Commissioner agreed to a voluntary remand, and the court remanded the claim for further proceedings on March 26, 2015. (R. 674–76, 690–94).

Claimant filed new claims for benefits on October 7, 2014, which the Appeals Council determined were rendered duplicate by the remand and ordered them consolidated with the prior claims. (R. 712). On March 3, 2016, ALJ Morriss held a new hearing at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 630–49). On April 29, 2016, the ALJ issued a decision denying Claimant's request for benefits. (R. 610–29). On September 26, 2016, the Appeals Council denied Claimant's request for review. (R. 597–603). Claimant filed a complaint in this court seeking review of the final administrative decision, the Commissioner agreed to a voluntary remand, and the court remanded the claim for further proceedings on July 10, 2017. (R. 1267–74).

The claims were remanded by the Appeals Council to a different ALJ, (R. 1278–79), and on April 1, 2019, ALJ Rebecca Adams held a hearing at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 1194–1232). At the hearing, Claimant amended her alleged onset date to December 1, 2011. (R. 1157). On June 3, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 1154–85). On November 19, 2019, the Appeals Council denied Claimant's request for review. (R. 1118–24). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under

2

the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

3

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) improperly weighing the medical opinion of Claimant's treating physician, and (2) improperly evaluating other evidence in the record. Pl.'s Mem. [DE-26] at 21–27.[1]

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since December 1, 2011, the amended onset date. (R. 1160). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the

---

[1] The court references the page numbers in the CM/ECF footer where they differ from the internal page numbers in the memorandum.

4

cervical spine, status-post multi-level surgical fusion and decompression with residual chronic pain; degenerative disc disease of the lumbar spine; and asthma. *Id.* The ALJ also found Claimant had non-severe impairments of diabetes mellitus; gastrointestinal and rectal issues, e.g., abdominal pain with associated nausea, vomiting, and diarrhea, hematochezia, and hemorrhoids/anal lesion excision; chronic kidney stones and urinary tract infections; gallbladder removal; fundoplication; (remote) deep vein thrombosis/emboli; depression; and anxiety. (R. 1160–61). The ALJ found Claimant's PTSD to be a non-medically determinable impairment. (R. 1161). At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1163–64). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in interacting with others and adapting or managing oneself and mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (R. 1162).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations:

> frequent but not constant overhead reaching bilaterally using her upper extremities due history of neck pain with radiculopathy. She cannot lift any objects overhead using her upper extremities bilaterally. She can frequently but not constantly handle and finger using the left upper extremity due to history or radiculopathy greater on the left. Due to history of lower back pain, she can never climb ladders, ropes, or scaffolds, or crawl. She can occasionally stoop, kneel, and crouch. Due to history of asthma, she must avoid concentrated exposure to respiratory irritants and to extreme cold. She can have frequent interaction with coworkers and supervisors and only occasional causal contact with the public.

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

(R. 1165–73). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence in the record. (R. 1166). At step four, the ALJ concluded Claimant was unable to perform any past relevant work. (R. 1173–74). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 1174–75).

## V. DISCUSSION

### A. The RFC Determination

Claimant alleges two errors implicating the RFC determination: (1) improperly weighing the medical opinion of Claimant's treating physician, and (2) improperly evaluating other evidence in the record. Pl.'s Mem. [DE-26] at 21–27.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is

6

separately discussed by the ALJ, and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted).

### 1. The ALJ's Weighing of Claimant's Treating Physician's Opinion

Claimant contends the ALJ erred in weighing the opinion of Claimant's treating physician Dr. Zinicola. Pl.'s Mem. [DE-26] at 21–25. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R.

7

§ 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

On March 20, 2013, Dr. Zinicola provided the following opinion regarding Claimant's impairments:

> Mrs. Felicia Lee has been my patient for many years. She has severe issues with her cervical spine and severe issues with her lumbar spine. In addition, Mrs. Lee has had issues with anxiety and obesity, which I have treated.
>
> In 2008 lesions were discovered on her lumbar spine and degenerative disk disease was affecting her cervical spine.
>
> In 2010 the pain and numbness in her upper extremities had risen to the point the she required a cervical fusion. For a few months in late 2010 immediately following surgery, her pain and numbness receded, but this was temporary relief. The pain and numbness from her cervical spine returned. She continues to need treatment by pain medications and muscle relaxers. It continues to limit her range of movement and will make it difficult for her to perform jobs with her arms and hands. It is unlikely that these conditions will resolve.
>
> Problems with and pain from her lumbar spine will make it difficult to perform jobs that require walking or standing or sitting. She now has issues of urinary incontinence, which may be related to her spinal condition. I have referred her to a neurologist for evaluation.
>
> I am aware of her statements of her pain and numbness given during a Consultative

8

> Exam in 2011. Her statements of pain and numbness being very severe on some days on an intermittent basis is entirely consistent with spinal issues such as hers. Her statement that sometimes she is unable to open a soft drink, put on her clothes, or do her hair, are consistent with this and accurately [sic] to her treatment history.
>
> I have reviewed several of her pain calendars. They are consistent with her condition and treatment history. They show no days without pain. They show very few days where she retains the ability to function at even a sedentary level for more than a few hours. It is expected that her pain worsens with unpredictable frequency.
>
> Even with pain medication, her spine is going to make her unreliable in getting ready and dressed, getting to work, and performing basic activities. It is likely that the pain and pain medication will make it difficult for her to sustain concentration.
>
> Because of this pain and unreliability, Mrs. Lee is not able to maintain employment on a sustained and regular basis.

(R. 543). The ALJ summarized Dr. Zinicola's opinion and assigned it little weight because,

> although from a longstanding treating source it is vague, conclusory, and inconsistent with other evidence of record. As discussed above, Dr. Zincola's own treatment notes from 2013 show normal findings on neck, musculoskeletal, and extremity examinations (see e.g. Ex. 8F/2, 6-7 and 10F) and imaging from September 2012 did not evidence severe abnormalities (Ex. 6F). The claimant's examinations by other medical providers in 2013 (and since) also do not reveal any significant musculoskeletal or neurological findings (see e.g. 15F/18-23). Moreover, the pain calendar entries reviewed by Dr. Zincola are vague, minimally completed and wholly subjective. In addition, they were forms provided by the claimant's representative and appear to only define pain ratings from 4-10 (distressing to unimaginable) and do not provide descriptions of pain ratings from 1-3 (Ex. 11F/3-5).

(R. 1167–68) (the ALJ misspelled Dr. Zinicola's name).

The evaluation of a treating physician's opinion involves applying two distinct rules: first, under the treating physician rule, the ALJ must determine whether the opinion is entitled to controlling weight; and second, if the opinion is not entitled to controlling weight, it must be it must be weighed in light of the § 404.1527(c) factors listed above. *Dowling v. Comm'r of Soc. Sec. Admin.*, No. 19-2141, 2021 WL 203371, at *4 (4th Cir. Jan. 21, 2021). The Fourth Circuit recently characterized the treating physician rule as "a robust one" and explained that a treating

9

physician's opinion "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 (4th Cir. 2020) (quoting *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). The ALJ determined Dr. Zinicola's opinion was only entitled to "little weight" because it was vague, conclusory, and inconsistent with other evidence of record. (R. 1168). The ALJ did not expressly discuss application of the treating physician rule; yet, implicit in the ALJ's decision to give Dr. Zinicola's opinion little weight is that the ALJ found the opinion was not entitled to controlling weight. (R. 1168). The ALJ did explain that Dr. Zinicola's opinion was inconsistent with other evidence in the record, including his own treatment notes, imaging, and examinations by other medical providers around the same time. *Id.* The existence of contradictory substantial evidence is one justification for not giving controlling weight to a treating physician's opinion. *Arakas*, 983 F.3d at 107. However, the evidence cited by the ALJ is not clearly contradictory.

Dr. Zinicola's treatment notes between January and April 2013, cited by the ALJ, indicate physical examinations were normal, but they also consistently note a diagnosis of chronic low back pain for which Claimant was treated with narcotic and anti-nausea medications and a muscle relaxer. (R. 487–92). The September 2012 imaging the ALJ cites are a CT of the cervical spine that noted underlying congenital spinal canal stenosis and degenerative disc disease at C7–T1, and a CT of the lumbar spine noted lower lumbar spondylosis with left asymmetric disc bulge at L5/S1 and left foraminal narrowing. (R. 463–64). While the ALJ characterized these findings as non-severe abnormalities, the basis for that assessment is not apparent, and the ALJ is not a doctor. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Dr. Zinicola cited Claimant's

10

lumbar and cervical spine impairments as the source of her pain, imaging supports Dr. Zinicola's diagnosis of chronic low back pain, and the Fourth Circuit has repeatedly held that "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). Finally, the "examinations by other medical providers in 2013 (and since)" cited by the ALJ appear also to be treatment notes from Dr. Zinicola, which are consistent with his other treatment notes already discussed. (R. 936–41).

The ALJ also found Dr. Zinicola's opinion to be vague and conclusory. The court disagrees. Dr. Zinicola, in a one-page letter, explained that he treated Claimant for many years for, among other things, severe cervical and lumbar spine issues due to lesions on the lumbar spine and degenerative disc disease of the cervical spine. Dr. Zinicola described Claimant's symptoms including pain, numbness, and limited range of movement. He discussed her treatment including a fusion surgery that provided only temporary relief, as well as pain medication that made it difficult for her to concentrate. Dr. Zinicola explained that intermittent pain was consistent with her conditions and that even with medication her ability to perform basic functions was unreliable. Dr. Zinicola concluded that her impairments would make it difficult for her to perform jobs involving the use of her arms or hands or jobs that require walking, standing, or sitting and that she is not able to maintain employment on a sustained and regular basis. (R. 543); *see Arakas*, 983 F.3d at 109 (explaining that ALJ's may not disregard opinions regarding a claimant's ability to work when offered by a treating physician) (citing *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (holding that the "ALJ improperly refused to credit [the treating physician's] medical opinion that his long term patient . . . was totally disabled"); *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (finding that the ALJ erred by disregarding the treating physician's opinion that the

11

claimant's "combination of mental and medical problems makes . . . sustained full time competitive employment unlikely"); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (concluding that the ALJ's rejection of the treating physician's "four-hour [work] day restriction" was "wrong" because "medical opinions on how much work a claimant can do are not only allowed, but encouraged")). Dr. Zinicola's opinion was clear and well-explained, and the ALJ's finding that it was vague and conclusory is unsupported.

Lastly, the ALJ took issue with pain calendar entries reviewed by Dr. Zinicola characterizing them as "vague, minimally completed and wholly subjective." (R. 1168). The fact that the pain calendar is "wholly subjective" is not objectionable. *See Lakeman v. Saul*, No. 7:18-CV-97-BO, 2019 WL 4385498, at *2 (E.D.N.C. Sept. 12, 2019) (finding that the "[p]laintiff established that she had degenerative disc disease, which is capable of causing severe pain, and was entitled to rely on subjective evidence." (citing *Hines*, 453 F.3d at 565)). In finding the calendars "vague" and "minimally completed," (R. 1168), it is unclear what information the ALJ found lacking. On one monthly calendar Claimant indicated daily information such as when she would awaken or need to lie down due to pain or when her activities were limited by pain. (R. 544). Another month she listed a numerical rating of her pain level and a descriptive word indicating the severity of her pain, e.g., "deep pain, back pain," "distress," or "dominating." (R. 546). If there was confusion about the pain calendars, the ALJs could have asked the Claimant about them at one of the three administrative hearings. It is also unclear why the fact that a blank calendar was provided to Claimant by her representative for the purpose of recording her pain levels detracts from the reliability of this evidence. Other courts have found suspect or improper reasoning that discounts evidence due to the fact that it was obtained by a claimant's representative. *See Wood v. Colvin*, No. CIV.A. 13-30151-KPN, 2014 WL 5285705, at *5 (D. Mass. Oct. 14, 2014);

12

*Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.").

The ALJ erred in evaluating Dr. Zinicola's opinion under the treating physician rule where the ALJ's opinion demonstrates neither that Dr. Zinicola's opinion was based on medically unacceptable clinical or laboratory diagnostic techniques or that it is contradicted by other substantial evidence in the record. Accordingly, the matter must be remanded for the ALJ to evaluate Dr. Zinicola's opinion under the appropriate framework.

### 2. The ALJ's Evaluation of Other Record Evidence

Claimant contends the ALJ failed to properly evaluate other record evidence by using or citing it incorrectly. Pl.'s Mem. [DE-26] at 26–27. A decision based on cherry-picked, misstated, or mischaracterized facts cannot be upheld as supported by substantial evidence. *Arakas*, 983 F.3d at 99.

First, Claimant points out that the ALJ relies on a consultative examiner's report that is missing a page. Pl.'s Mem. [DE-26] at 26 (citing Ex. 17F – R. 958–59). On remand, the ALJ should obtain the complete report if it is to be relied upon in making the disability determination. Claimant also contends the ALJ misinterpreted evidence from the report regarding whether Claimant completed a two-year degree during the disability period or in the 1980's. *Id.* Another record, from January 2011, stated that Claimant indicated she was "currently in school in criminal justice." (R. 425). The record, thus, supports the ALJ's characterization of this evidence.

Second, Claimant contends the ALJ failed to consider the extent to which she can perform activities. Pl.'s Mem. [DE-26] at 26. The ALJ states that Claimant described activities such as attending her children's sporting events, watching television, doing volunteer work, being able to

13

handle her finances, and doing grocery shopping. (R. 1162, 1166). "An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Arakas*, 983 F.3d at 99 (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). On remand, the ALJ should consider both the type of activates Claimant can perform and the extent to which she can perform those activities.

Third, Claimant contends the ALJ misinterpreted the record regarding whether her PTSD and depression were severe impairments and failed to evaluate them at step two and subsequent steps of the disability determination. Pl.'s Mem. [DE-26] at 26–27. At step two the ALJ discussed Claimant's alleged mental impairments as follows:

> The claimant also underwent assessment for mental health treatment on referral from primary care (Dr. Zin[i]cola) for alleged trauma related symptoms on July 13, 2015 after a former paramedic partner reportedly shot his roommate recently (Ex. 23F/10). The claimant also noted she had an upcoming disability hearing (Ex. 23F/2) and she described triggers such as hearing sirens or seeing an ambulance, not wanting to leave [her] room or talk with others, and nervousness when her children are out of home due to fears of car accidents or drunk drivers (Ex. 23F/4). Nonetheless, her mental status examination findings were within normal limits other than an anxious, depressed mood and mildly impaired social judgment (Ex. 23F/5-6). Although diagnosed with post-traumatic stress disorder (PTSD) by the examining licensed social worker (Claire Carpreso) who recommended outpatient therapy 1-4 times a month to address symptoms along with psychiatric evaluation for medication management (Ex. 23F/10, 13), there is no indication of the claimant subsequently attending therapy, undergoing further evaluation for PTSD, or receiving formal mental health treatment. Nor is there any indication of an acceptable medical source diagnosing the claimant with PTSD. Accordingly, the undersigned finds PTSD to be a non-medically determinable impairment. However, the claimant continues to take medication for alleged depression/anxiety prescribed by primary care and the undersigned finds depression/anxiety to be non-severe impairment(s) not causing more than minimal limitation in the claimant's ability to perform basic mental work activities.

(R. 1161).

Dr. Ngo's statement in his June 2015 report that Claimant "claims that she hears baby crying and because this was her job in the past of an EMT (looks like she is having PTSD)," (R.

14

1006), is not a diagnosis of PTSD, and Dr. Ngo, in fact, did not diagnose Claimant with PTSD but recommended a psychological evaluation, (R. 1008). The ALJ discussed the record cited by Claimant, a July 2015 psychological assessment where a social worker diagnosed Claimant with PTSD and recommended treatment, (R. 1030–41), but accurately observed that Claimant was not subsequently treated for PTSD, (R. 1161). The ALJ also discussed Claimant's depression and anxiety at step two, *id.*, applied the special technique, (R. 1162–63), and accounted for Claimant's depression and anxiety in formulating the RFC, (R. 1173). Accordingly, the ALJ did not err in evaluating Claimant's mental impairments.

Fourth, Claimant contends the ALJ erred in giving little weight to her Medicaid status evidenced by a copy of her Medicaid card, (R. 244, 837). Pl.'s Mem. [DE-26] at 27. The Commissioner takes the position that because there was no supporting documentation to show the basis for her Medicaid award there was nothing for the ALJ to consider. Def.'s Mem. [DE-33] at 13–14. In the case of *Bird v. v. Comm'r of Soc. Sec. Admin.*, the court found that although another agency's "decision is not binding on the [Social Security Administration ("SSA"),] . . . under the principles governing SSA disability determinations, another agency's disability determination 'cannot be ignored and must be considered.'" 699 F.3d 337, 343 (4th Cir. 2012) (citing 20 C.F.R. § 404.1504 & S.S.R. 06-03p, 2006 WL 2329939 (Aug. 9, 2006)). In addition to Claimant's Medicaid card in the record, Claimant's representative at the April 1, 2019 hearing also told the ALJ that Claimant's surgery was delayed until she was able to obtain Medicaid coverage. (R. 1201). There is some case law to support the Commissioner's position that a Medicaid card alone is not a disability determination that must be considered, *Davis v. Colvin*, No. 3:13-CV-189-RJC-DSC, 2014 WL 868709, at *2 (W.D.N.C. Mar. 5, 2014), and it is unclear why Claimant's representative submitted a copy of Claimant's Medicaid card but not the underlying disability

15

determination. However, because this case is being remanded to the Commissioner on other grounds, the Commissioner should attempt to obtain a copy of the Medicaid decision for full consideration on remand in accordance with *Bird*. *See Woodall v. Colvin*, No. 5:12-CV-357-D, 2013 WL 4068142, at *5 n.3 (E.D.N.C. Aug. 12, 2013); *Chriscoe v. Colvin*, No. 1:13CV788, 2015 WL 4112442, at *4 (M.D.N.C. July 8, 2015) ("evidence clearly put the ALJ on notice that another agency had found Plaintiff disabled, [but] the ALJ made no effort to obtain a copy of that decision or further consider Plaintiff's Medicaid approval when evaluating her case").

Finally, Claimant contends the Appeals Council erred by failing to exhibit evidence it found did not show a reasonable probability it would change the outcome of the decision. Pl.'s Mem. [DE-26] at 27. Claimant's assertion of error in this regard is conclusory and fails to suggest any reason why the Appeals Council's determination was improper. Accordingly, the court declines to consider this undeveloped argument.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-25] is allowed, Defendant's Motion for Judgment on the Pleadings [DE-32] is denied, and this matter is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this 26th day of January 2021.

Robert B. Jones, Jr.
United States Magistrate Judge

16